# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHARLEY J. WILLIE,

      Plaintiff,

      v.                                    1:24-cv-1175-DHU-KK

FRANK J. BISGNANO[1], Commissioner
of the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]

Before the Court is Plaintiff Charley Willie's ("Claimant") Motion for an Award of Immediate Benefits or to Reverse and Remand to Agency ("Motion"), filed April 16, 2025, in which Claimant appeals the denial of his claim for Disability Insurance Benefits and Supplemental Security Income. (Doc. 16.) On June 16, 2025, the Commissioner filed a response to Claimant's Motion. (Doc. 22.) Claimant filed a reply on July 2, 2025. (Doc. 23.) Having meticulously reviewed the entire record and the relevant law, being otherwise sufficiently advised, and for the reasons set forth below, I propose to find that Claimant's Motion is well taken. I therefore recommend that the Court GRANT the Motion, reverse the Commissioner's decision denying benefits, and REMAND this matter to the Commissioner for an immediate award of benefits.

---

[1] Frank J. Bisgnano was confirmed as the Commissioner of the Social Security Administration on May 6, 2025, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d)

[2] By an Order of Reference (Doc. 13) entered on March 10, 2025, United States District Judge David H. Urias referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

## I.    FACTUAL AND PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income benefits on July 7, 2011, alleging a disability because of "back issues" beginning on April 5, 2011. (AR[3] 163-171, 172-173, 202.) Claimant had been admitted to the University of New Mexico Hospital for forty-three days from April 4, 2011, through May 17, 2011, after a December 2010 fall that severely injured his back.[4] (AR 202, 330.) Claimant's claim was denied initially on December 21, 2011, and on reconsideration on October 16, 2012. (AR 93-94, 95-110.) After a December 20, 2013, administrative hearing, an administrative law judge ("ALJ")[5] issued an unfavorable decision on March 28, 2014, applying the five-step sequential evaluation process.[6]

---

[3] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on January 16, 2025. (Doc. 9.)

[4] Claimant's back injury occurred in December 2010, when he fell from a wall. (AR 202, 330.) The medical evidence demonstrates that Claimant reported to the University of New Mexico Hospital Emergency Department on April 3, 2011, with back pain, shooting pains in his buttocks and legs, difficulty walking, and numbness and weakness in his lower extremities. (AR 1268-1270.) After imaging, including an MRI and CT scan, doctors noted the following concerns: concerns for discitis/osteomyelitis at T10 and T11; decreased T1 and increased T2 signal intensity throughout T10 and T11 vertebral bodies and disc; paraspinous inflammation extending from T9-T12; questionable cord signal abnormality posteriorly was seen on the sagittal T2-weighted sequence; extensive destruction of the endplates surrounding the T10-T11 disc, with osseous erosion extending into the anterior aspects of the vertebral bodies; and severe spinal canal stenosis at T10-T11. (AR 335-344, 1340-45.) As a result, Claimant underwent a T10-T11 corpectomy and T8-T12 fusion with other procedures to repair injuries or remove masses. (AR 330-31, 339-343, 1317-1318.) He underwent a second surgery, a posterolateral fusion from T9 to T12. (AR 1261-1264.)

[5] As discussed below, ultimately, the agency held four administrative hearings. The ALJ who presided over the first two hearings was Michelle Lindsay. The ALJ who presided over the second two hearings was Jennifer Fellabaum.

[6] The five-step sequential evaluation process requires the ALJ to determine whether:

(1) the claimant engaged in substantial gainful activity during the alleged period of disability;
(2) the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
(3) any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4) the claimant can return to his or her past relevant work; and, if not,
(5) the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

2

(AR 125-128, 36-47.) The Appeals Council rejected Claimant's appeal, making the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

Claimant filed his first federal court appeal of the Commissioner's final decision in September 2015, arguing that the ALJ had failed to develop the record regarding his non-exertional impairments and had failed to properly evaluate his obesity. (AR 803.) The Honorable Karen B. Molzen found that Claimant's testimony during the administrative hearing about his difficulty reading and writing, coupled with information about his receipt of special education services during his primary education, required the ALJ to gather more information about whether Claimant's mental functioning eroded the skill level of the work he could perform. (AR 808 *citing* 42 U.S.C. § 421(h)(1) (requiring "in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.")) The Court also held that Claimant's testimony during the administrative hearing about his depression required the ALJ to gather more information about whether Claimant's depression also interfered with his ability to work. (AR 811-812.) Thus, the Court reversed and remanded the claim to the agency with instructions for the Commissioner to obtain and consider consultative examinations to assess the degree of Claimant's mental limitations. (AR 800-13.)

During the second administrative proceeding, the ALJ obtained additional medical records and two consultative examination reports. (AR 16F-26F, 1078-1502.) Psychologist Dr. David LaCourt, Ph.D. examined Claimant on February 8, 2016, and provided an opinion regarding Claimant's mental limitations. (AR 1404-1406.) Dr. Raul Young-Rodriguez, M.D., evaluated Claimant on February 17, 2016, and provided an opinion regarding the limitations created by Claimant's physical impairments. (AR 1499-1502.) After an August 24, 2017, hearing (AR 743-

773), the ALJ again issued an unfavorable decision on December 20, 2017. (AR 721-742.) At step three of the five-step process, the ALJ accepted that Dr. LaCourt's findings established Claimant had moderate limitations in "his ability to understand, remember, or apply information" and in "his ability to concentrate, persist, or maintain pace." (AR 728.) However, when later determining Claimant's RFC, the ALJ did not account for these limitations, stating that "[o]ther than proving that [Claimant] is a poor reader, little has changed that would alter my 2014 decision" because of Dr. LaCourt's examination and opinion. (AR 732.)

Claimant then filed his second appeal in federal court and on April 29, 2020, the Honorable Stephan M. Vidmar noted that "[i]t is not clear how the RFC's statement that [Claimant] could 'maintain attention and concentration to perform and persist at simple tasks for two hours at a time without redirection to task' takes into account his moderate limitation in concentration and persistence." (AR 1596.) The Court further noted that the RFC did not account at all for Claimant's "moderate limitation in understanding, remembering, or applying information." (AR 1596.) Accordingly, the Court remanded the claim to the agency, noting that the ALJ accepted some of the limitations found by Dr. LaCourt and then failed to account for these limitations described in finding Claimant's RFC. (AR 1587-1599.)

After the District Court's remand, a different ALJ held a third administrative hearing on February 2, 2021 (AR 1533-1560.) The ALJ issued an unfavorable decision on March 9, 2021. (AR 1509-1523.) In assessing Dr. LaCourt's opinion regarding limitations imposed by Claimant's mental impairment and reversing course from the prior administrative finding, the ALJ gave Dr. LaCourt's opinion little weight, stating that his opinion "is partially consistent with the longitudinal record" without citing to any evidence. (AR 1520.) Similarly, the ALJ discredited Dr. Young-Rodriguez's opinion, stating that it was not supported by the record without citing to the record.

(AR 1520-1521.) Claimant again appealed to the federal court, arguing that the ALJ had improperly characterized and evaluated the consultant opinions. (*Willie v. Kijakazi*, No. 21-cv-1187 (NMD), Doc. 21 at 5-9.) Upon reviewing Claimant's Motion, the Commissioner acknowledged that "a remand for further proceedings [was] warranted." (AR 1972.) The Honorable Gregory B. Wormuth remanded the claim to the agency for a third time. (AR 1974-1975.)

After receiving the remanded claim, the Appeals Council provided instructions to the ALJ on remand, stating that the ALJ's prior decision did "not contain an adequate evaluation of the non-treating source opinions of the consultative examiners." (AR 1978.) The Appeals Council explained that the previous decision did "not provide any rationale as to why those opined limitations were unsupported, as required by Social Security Ruling 96-8p." (AR 1979.) Thus, the Appeals Council directed the ALJ on remand to:

(1) give consideration to the non-treating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the non-treating source provide additional evidence and/or further clarification of the opinion;
(2) give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; [and]
(3) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.

(AR 1979.)

The ALJ held a fourth administrative hearing on September 21, 2023 (AR 1910-1941) and issued an unfavorable decision on October 5, 2023. (AR 1881-1909.) At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date, April 5, 2011.

5

(AR 1887.) At steps two and three, the ALJ found Claimant had the following severe impairments: thoracic diskitis and osteomyelitis, status post fusion, lumbar degenerative disc disease, peripheral neuropathy, with an onset of June 11, 2015, obesity, somatoform disorder, and a specific learning disorder in reading, but that the impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1888.) The ALJ found Claimant's depression to be not medically determinable. (AR 1888.)

> The ALJ found Claimant had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; he can never climb ladders, ropes, or scaffolds; he cannot be exposed to unprotected heights or hazardous machinery; he cannot have concentrated exposure to extreme cold; he cannot operate a motor vehicle for commercial purposes; he can perform simple, routine, repetitive tasks and make simple work decisions; he cannot perform fast paced (assembly line) work; and work should be performed in the same location every day, with no more than occasional changes to the work tasks assigned. As of June 11, 2015, he can additionally occasionally operate foot controls bilaterally.

(AR 1890.)

The ALJ determined at step four that Claimant could not perform any past relevant work. (AR 1896.) At step five, the ALJ determined that Claimant's impairments eroded the unskilled light occupation base and questioned the vocational expert on jobs that Claimant could perform given limitations of Claimant's RFC. (AR 1897.) Based on the vocational expert's testimony that a hypothetical individual with Claimant's limitations could perform the requirements of a "Cleaner," "Car Wash Attendant," or "Material Distributer" as described in the Dictionary of Occupational Titles, the ALJ determined Claimant was not disabled. (AR 1897-1898.) This appeal followed.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

The "[f]ailure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting

7

his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

### III.   DISCUSSION

Claimant asserts that, as was the case in the second and third unfavorable decisions by the agency, the ALJ failed to properly weigh the opinions of the DDS consultative examiners, Dr. LaCourt and Dr. Young-Rodriguez. (Doc. 16 at 2.) Claimant argues that in failing to properly weigh the doctors' opinions, the ALJ violated the Appeals Council's mandate, which constituted legal error requiring reversal.[7] (Doc 16 at 9.) Claimant further argues that the Court should award Claimant benefits pursuant to 42 U.S.C. § 405(g). (Doc. 16 at 2.) The Commissioner responds that Claimant fails to read the ALJ's opinion as a whole. (Doc. 22 at 11.) The Commissioner asserts that when the ALJ's opinion is read as a whole, a reviewing court can follow her reasons for discrediting the opinions of Dr. LaCourt and Dr. Young-Rodriguez and that those reasons are supported by substantial evidence. (AR 22 at 11, 13.)

A.  Dr. LaCourt's Opinion

Dr. David LaCourt conducted a psychological evaluation of Claimant on February 8, 2016, after the first District Court remand to the agency. (AR 1404-1406.) Dr. LaCourt made several observations during his examinations that reflected the way in which Claimant's mental impairment limited him. (AR 1404-1406.) For example, Dr. LaCourt observed that Claimant was "vague beyond [a] general description" of his high school experience, receiving special education services and supports in reading and writing and that he provided other vague responses during

---

[7] The mandate rule requires an administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart. *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002).

the evaluation that Dr. LaCourt believed "served to mask small gaps." (AR 1404-1405.) Dr. LaCourt also observed that although Claimant's attention was "in the normal range" he had a "low normal" level of general concentration. (AR 1405.) Dr. LaCourt observed a "somatic centering, on a range of aches and pains, particularly on his back issues." (AR 1405.)

During the examination, Dr. LaCourt administered the reading portion of the Wide Range Achievement Test, revision 3 (WRAT3). (AR 1405.)  The results of the WRAT3 showed Claimant read at the "2nd grade level and reflect[ed] no more than marginal literacy." (AR 1405.) After the examination, Dr. LaCourt diagnosed somatic symptom disorder, persistent, with moderate severity and a specific learning disorder, with impairment in reading. (AR 1405.) Dr. LaCourt found a mild limitation in understanding and remembering verbal instructions and a marked limitation in understanding and remembering written instructions. (AR 1405.) He found marked limitation in sustained concentration and task persistence, attending and concentrating, and in working without supervision, noting Claimant's limited persistence and frequent breaks. (AR 1405.) He found a mild limitation in social interaction with the public, coworkers, or supervisors. (AR 1405.) Dr. LaCourt found a mild limitation in adaption to changes in the workplace with a moderate limitation in awareness of hazards or reaction to them. (AR 1406.) Finally, he found a moderate limitation in using public transportation, particularly to unfamiliar places (AR 1406.)

Dr. LaCourt's opinion is uncontroverted, and the ALJ must explain why it was not adopted, with specific, legitimate reasons for rejecting it. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); SSR 96-8P, 1996 WL 374184, at *7. The ALJ's rationale for rejecting Dr. LaCourt's opinions must be sufficiently detailed to allow a subsequent reviewer to follow her reasoning. *Clifton*, 79 F.3d at 1009. More, the ALJ may not pick and choose only the parts of the record or of Dr. LaCourt's examination that support an unfavorable decision. *Haga v. Astrue*, 482 F.3d 1205,

9

1208 (10th Cir. 2007); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). Similarly, the ALJ may not mischaracterize Dr. LaCourt's findings and opinions to reach an unfavorable decision. *Pinto v. Kijakazi*, No. 20-CV-01095, 2022 WL 15273064, at *6 (D.N.M. Oct. 27, 2022). Here, as discussed below, the ALJ fails to set forth a rationale for discrediting Dr. LaCourt's opinion that subsequent reviewers can follow, mischaracterizes Dr. LaCourt's findings and opinion, and selectively chooses and mischaracterizes medical evidence to support an unfavorable decision.

First, the ALJ provides a conclusory dismissal of Dr. LaCourt's opinion, stating that it is "inconsistent with [Claimant's] repeated displays of normal and nearly normal mental functioning, with some exceptions." (AR 1896.) The ALJ offers a string citation to the record in support, failing to describe either what the evidence shows, why it establishes that Claimant had "normal or nearly normal mental functioning", or how it is inconsistent with Dr. LaCourt's opinion. (AR 1896.) The ALJ's reference to the records is not sufficiently specific to allow the Court to follow her rationale. *See Castillo v. Saul*, No. 19-CV-722, 2020 WL 7264124, at *10 (D.N.M. Dec. 10, 2020). The Commissioner argues that if "read as a whole" the ALJ sets forth a rationale to discredit Dr. LaCourt's opinion. (Doc. 22 at 11-13.) To support the argument, the Commissioner points to the ALJ's statements that Claimant was "able to follow instructions at examinations" and that he was "alert, oriented, pleasant, and cooperative, with good eye contact, normal cognition, logical thought processes, normal thought content, and intact judgment." (Doc. 22 at 12 *citing* AR 1893.)

The ALJ's implicit rationale, the Commissioner argues, suggests that Claimant's alertness and similar qualities during physical examinations undermines Dr. LaCourt's findings. (Doc. 22 at 12.) A review of the records referenced in the ALJ's unexplained string of citations demonstrates that Claimant could attend brief appointments to treat his physical impairments (e.g. assessing

10

back pain or monitoring diabetes or obesity). (AR 378, 578, 585, 592, 594, 616, 1083, 1098, 1234, 1813, 1827-1828, 1839, 1847, 2177, 2195.) As a specific example, the ALJ cites to Claimant's treatment after a bus accident, in which he complained of back pain. (AR 578, 1896.) During this five-minute examination[8], a doctor noted that Claimant was "[a]lert and oriented to person, place, time, and situation, [with] no focal neurological deficit observed." (AR 578.) The doctor, however, did not comment on Claimant's ability to follow instructions, persist, or work without supervision; nor did the doctor examine or treat Claimant's mental impairment. (AR 578.)

The Commissioner goes further and states that "there was no evidence of an inability to function without more detailed supervision," (Doc.22 at 12), but none of the physicians treating Claimant's physical impairments, offers such an opinion or even commented on or observed how Claimant's mental impairment impacted his ability to persist, concentrate, work without supervision, or follow instructions, which were the bases of Dr. LaCourt's findings. (*See* AR 378, 578, 585, 592, 594, 616, 1083, 1098, 1234, 1813, 1827-1828, 1839, 1847, 2177, 2195.)

It is unclear how observations of alertness or cooperation by physicians treating Claimant during short physical examinations speak at all to the impact of Claimant's mental impairment, particularly whether his mental impairment, as found by Dr. LaCourt, limits his ability to concentrate, persist, or follow instructions and to work without supervision or to understand instructions during an 8-hour workday. Courts have rejected this kind of reasoning, noting that normal behavior during medical examinations does not serve to establish that specific mental findings by another physician are inconsistent with the record. *See Patricia M. v. Kijakazi*, No. 21-CV-265, 2022 WL 3083721, at *7 (D.N.M. Aug. 3, 2022) (observing that normal behavior during a medical exam did not undermine opinion of examining doctor that depression and anxiety

---

[8] The record shows that the examination began at 18:01 and the Doctor completed the record at 18:06. (AR 578-579.)

impacted claimant's ability to work); *Griego v. Kijakazi*, No. 20-CV-1187, 2022 WL 35817, at *8 (D.N.M. Jan. 4, 2022) (holding that ALJ's reliance on endocrinologist's finding that a claimant was "alert" not inconsistent with opinion of psychologist regarding claimant's mental state); *Stonestreet v. Saul*, No. 19-CV-230, 2020 WL 1049349, at *10 (finding it unclear how an emergency room doctor's notation that a claimant was alert when presenting with chest pain supports rejection of medical opinion about the impact of the claimant's mental impairments); *Hernandez v. Colvin*, 223 F. Supp. 3d 1162, 1167 (D. Kan. 2016) (finding that ALJ's assertion that being alert and oriented is inconsistent with finding an inability to understand and remember simple instructions was insufficient to discount examining doctor's opinion). Claimant's ability to attend to a brief physical examination, where a physician asks specific questions in a one-on-one setting, provides little insight as to how he could persist and perform unsupervised tasks throughout a full workday or follow instructions in the workplace. In short, by overstating the nature of the evidence, the ALJ exaggerates medical findings of "alertness" to establish "normal or nearly normal mental functioning." (AR 1896.)

Moreover, the ALJ cherry-picks from the record, citing only the evidence described above related to Claimant's alertness or general mood. (AR 1896.) The ALJ appears to ignore evidence in the record that speaks more directly to the impact of Claimant's mental impairment and that supports Dr. LaCourt's findings. For example, during a referral for diabetes education, the treating physician noted Claimant demonstrated a "poor understanding of prediabetes" and "seemed to misunderstand his labs" when the physician "spent time teaching development of metabolic needs." (AR 627.) Later, the physician noted he "finally understood" the explanation. (AR 627.) In addition, a field office employee who took Claimant's initial application face-to-face observed and commented on Claimant's intellectual impairment, noting that Claimant "seemed a little slow,"

12

further suggesting Claimant's mental impairment limited his ability to concentrate or follow instructions (AR 199.) Finally, the ALJ did not appear to consider information from the administrative hearing itself. (AR 1910-1941). For example, at the hearing, Claimant told the ALJ he "didn't really understand" when the ALJ explained the nature of the proceedings.[9] (AR 1926.) Claimant stated that he never acquired a driver's license because he could not read or write. (AR 1926.) He described having to take pictures of his medication because he could not read the label or having to rely on shortened words, such as "ban" for "banana," when writing a grocery list. (AR 1932-33). This evidence speaks to Claimant's limitations in abilities to understand directions and to work without supervision, and thus is significantly probative. In selectively choosing from the evidence only that which supports an unfavorable finding and in failing to consider significantly probative evidence that undermines the ALJ's finding, the ALJ has erred. *Haga*, 482 F.3d at 1208.

Finally, the ALJ also mischaracterizes Dr. LaCourt's examination and findings and ignores information from Dr. LaCourt's findings that support his opinion. Dr. LaCourt found Claimant had "no more than marginal literacy." (AR 1405.) And yet, in discrediting Dr. LaCourt's opinion about how Claimant's mental impairment limited him, she understates his conclusion to establish "normal functioning with the exception of a low achievement test score." (AR 1896.) The ALJ's minimization and misstatement of the nature of Dr. LaCourt's findings is error. *Stonestreet*, 2020 WL 1049349, at *7 (finding error where ALJ mischaracterized medical opinion). More, the ALJ further mischaracterizes Dr. LaCourt's findings when she concluded that his opinions were "not supported by the findings of [his] examination" or that his examination reflected "normal and nearly normal mental functioning." (AR 1896.) Contrary to the ALJ's conclusion, Dr. LaCourt described several observations in support of his findings and opinion. (AR 1404-05, 1895-96.) For

---

[9] Notably, the ALJ did not further explain the proceedings to Claimant or clarify what Claimant did not understand.

example, Dr. LaCourt observed Claimant provided vague responses, which he suspected masked an absence of knowledge or ability. (AR 1404-05.) Dr. LaCourt also observed a "low normal level of concentration" during the evaluation. (AR 1405.) These observations support Dr. LaCourt's underlying opinion of the limitations caused by Claimant's mental impairment. (AR 1896.) An ALJ may not selectively choose from a medical opinion only information supporting an unfavorable decision. *Cordova v. Colvin*, No. 13-CV-830, 2015 WL 13665447, at \*13 (D.N.M. Mar. 10, 2015), *report and recommendation adopted*, No. 13-CV-830, 2015 WL 13665380 (D.N.M. Mar. 31, 2015); *Pinto v. Kijakazi*, 2022 WL 15273064, at \*6 (ALJ may not selectively adopt portions of medical opinion without providing reasoning for accepting or rejecting other portions of the opinion).

In sum, the ALJ cited without explanation largely irrelevant evidence regarding Claimant's "alertness" during brief medical appointments, ignored evidence that supported Dr. LaCourt's opinion, and mischaracterized Dr. LaCourt's opinion. The ALJ failed to provide adequate reasons for rejecting Dr. LaCourt's opinions and failed to cite to contrary medical and subjective evidence with sufficient specificity to satisfy Tenth Circuit standards to show that she considered all the significantly probative evidence. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (ALJ may not use portions of evidence favorable to her opinion while ignoring other evince or mischaracterize or downplay evidence to support her findings); *Clifton*, 79 F.3d at 1009–10 (ALJ must consider all the significantly probative evidence). Thus, I recommend the Court find that the ALJ's determination to give little weight to Dr. LaCourt's opinion is not supported by substantial evidence.

B. Dr. Young-Rodriguez's Opinion

14

Dr. Raul Young-Rodriguez conducted a consultative physical examination of Claimant on February 17, 2016. (AR. 1499-1502.) Dr. Young-Rodriguez noted in his opinion that he had reviewed the medical evidence and that his review informed his opinion. (AR 1499.) Like Dr. LaCourt, Dr. Young-Rodriguez referenced multiple observations that he made during the examination that supported his opinion. (AR 1499-1502.) Dr. Young-Rodriguez observed that Claimant could walk without assistive devices, but that his gait was unequal, seeming "to shift his upper body to the right excessively." (AR. 1501.) He also observed that Claimant was able to slowly lower himself onto the examination table but required assistance getting back up. (AR 1501.) Dr. Young-Rodriguez observed that Claimant could dress and undress himself with mild difficulty. (AR 1501.) Dr. Young-Rodriguez concluded that the evidence he found in Claimant's medical record and that he observed supported a moderate limitation of activity involving the thoracic spine, including occasionally lifting no more than 20 pounds, standing limited to 45 minutes, sitting limited to 2 hours at a time, standing and walking limited to a total of 4 hours in an eight hour day, and an inability to stoop, crouch, or crawl. (AR 1502.)

Claimant argues that the ALJ did not properly weigh Dr. Young-Rodriguez's opinion, as required by the Appeals Council's mandate, because she did not provide an explanation of how Dr. Young-Rodriguez's opinion was not consistent with the medical evidence. (Doc. 20 at 17.) The ALJ gave "partial weight" to Dr. Young-Rodriguez's opinion, stating that "his determination that the claimant can lift 20 pounds occasionally is supported by his examination findings, which were generally normal." (AR 1895.) She then discredited the remainder of Dr. Young-Rodriguez's opinion finding limits on Claimant's ability to stand, walk, sit, stoop, crouch and crawl. (AR 1895.) The ALJ stated that Dr. Young-Rodriguez's opinion was "not supported by his examination findings and . . . inconsistent with the evidence cited," again citing to various sources of medical

15

evidence but failing to explain how that evidence undermines Dr. Young-Rodriguez's opinion. (AR 1895.) The Commissioner argues that when the ALJ's opinion is "read in context" it is sufficient to set forth her reasoning. (Doc. 22 at 15.) The Commissioner points to the ALJ's earlier citation to the state agency medical consultants (Doc. 22 at 13 *citing* AR 828-830, 845-847, and 1895) and treating physicians' observations that Claimant "did well" after his 2011 back surgery. (Doc. 22 at 14 citing AR 1891-1893.)

An ALJ's rationale must allow a subsequent reviewer to follow her reasoning. *Clifton*, 79 F.3d at 1009. Merely pointing to a medical opinion and opining that it is inconsistent with the medical evidence is inadequate to meet the ALJ's burden of providing a rationale that a subsequent reviewer can follow. *Langley*, 373 F.3d at 1122. Rather, an ALJ must instead explain or identify what the claimed inconsistencies between the medical opinion and the medical evidence are. *Id.* at 1123. In addition, an ALJ may neither "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence," *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), nor mischaracterize or downplay evidence to support her findings. *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987).

To the extent that the Commissioner argues that the ALJ's description of some of the medical evidence serves as a rationale to explain the ALJ's reasons for discrediting Dr. Young-Martinez's opinion, a careful review of the evidence the ALJ cites to establish that Claimant had "normal or nearly normal physical functioning" shows that she both selectively chose only the evidence supporting an unfavorable decision and at times mischaracterized or downplayed evidence to support an unfavorable decision. Instead, as described below, much of the evidence cited by the ALJ is consistent, rather than inconsistent, with the kinds of limitations found by Dr. Young-Rodriguez, including being limited in his ability to sit, walk, or stand for extended periods

16

of time and being unable to stoop, crouch, or crawl. (AR 1502.) The ALJ's opinion does not offer explanations about how Dr. Young-Rodriguez's opinion is not consistent with the cited evidence. (AR 1895.) Thus, the ALJ's reasons for rejecting Dr. Young-Rodirguez's opinion are not sufficiently specific to enable meaningful review because she fails to explain or identify how that evidence was inconsistent with Dr. Young-Rodriguez's opinion. *See Langley*, 373 F.3d at 1123 (failure to provide sufficient explanation about why medical evidence was inconsistent with physician's opinion did not enable meaningful review).

In addition, the ALJ cherry-picks from the evidence or misrepresents it. For example, the ALJ cites medical evidence from September 2011, March 2012 and August 2012 examinations, none of which provide substantial evidence that Claimant exhibited "normal or nearly normal physical functioning" and instead provide medical evidence that supports Dr. Young-Rodriguez's findings. (AR 583-584, 1895.) During the September 2011 examination, a doctor observed that Claimant "cannot bend, squat, crawl on hands and knees, and has trouble climbing stairs," which reinforce, not undermine, Dr. Young-Rodriguez's opinion that Claimant had an inability to stoop, crouch, or crawl. (AR 584, 1502.) On March 16, 2012, a doctor noted that Claimant reported he could not do physical labor and that walking aggravated his pain. (AR 1225.) Claimant also reported that the back pain interfered with his sleep, and he had pain on his left side or upper abdomen. (AR 1225.) The evidence shows that Claimant had gained 14 kg (127kg to 141kg between fall 2011 and March 2012) and later expressed frustration about his weight gain and his inability to exercise. (AR 1225-1226, 1174-1176.) As a result, the doctor referred Claimant to a neurosurgery appointment and observed that Claimant's pre-diabetes and obesity "will contribute to poor outcome of [his] spine disease." (AR 1225.) The resulting imagery showed an "exaggerated lumbar lordosis" and "mild loss of intervertebral disc space at T12-L1." (AR 1321.) Finally, during

17

the August 2012 examination at a pain clinic, Claimant described "deep, aching and stabbing" back pain that is "associated with some subjective weakness of the legs." (AR 583.) The same examination also shows that Claimant had "a sensation of weakness when climbing stairs and dyspnea on exertion" and "persistent anesthesia in a band around the T10-T11 dermatome." (AR 583.) The doctor noted that Claimant told the provider that "[a]ny level of activity makes his pain worse." (AR 583.) The exam revealed tenderness in the lumbar and thoracic paravertebral musculature and decreased sensation in the T10 and T11 dermatomes. (AR 583.) None of these examinations suggest "normal or nearly normal physical functioning" as asserted, without explanation, by the ALJ.

There is more. Another portion of the record cited by the ALJ to suggest "generally normal" physical functioning relates to an October 2013 referral to physical therapy, more than two years after his initial surgery. (ALJ 1895 *citing* AR 573-577.) The cited evidence, however, provides additional medical evidence that supports Dr. Young-Rodrigeuz's opinions. (AR 573-577.) The evidence shows that Claimant had been "experiencing excruciating back pain," including "muscle spasms" that he rated between a 5 and 9 out of ten, for more than two years since his 2011 surgery. (AR 573.) The referring doctor observed that Claimant's gait favored his right side, and that he also had decreased hip extension, just as Dr. Rodriguez-Young had noted during his examination. (AR 573, 1501.) The doctor also observed Claimant sat in a "tripod" position, needing to place his hands on his knees to support himself. (AR 573.) The doctor also observed that Claimant "fatigues quickly and requires frequent breaks," noting that cold weather, squatting, bending over, and walking for more than ten minutes all increased Claimant's back pain. (AR 573, 575). The doctor observed a 50% decrease in range of lumbar motion and that forward bending and right-side bending causes pain and increased feeling of tightness. (AR 573.)

18

The doctor identified Claimant's Oswestry Disability Index at 72% disabled. (AR 574.) The physical therapy referral also established several short and long terms goals for Claimant, including for Claimant to tolerate walking for 15 minutes, to report a decrease in his worst pain to 6/10, to improve his disability rating by at least 20%. (AR 574.) A follow up summary by the physical therapist in January 2014, also cited by the ALJ, shows that Claimant only partially met the goal of tolerating walking for 15 minutes and did not meet the two other goals. (AR 613.) Another physician reported limited flexion and extension related to Claimant's back after the November 2013 bus accident that sent him to an Emergency Room. (AR 1351.)

Rather than undermine Dr. Young-Rodriguez's findings, evidence from the 2013 physical therapy referral supports Dr. Young-Rodriguez's findings The evidence shows that Claimant's limitations persisted more than two years after his initial surgery, that he was unable to walk for extended durations, that he needed to use his arm to support himself while sitting, that he had an abnormal gait, that he fatigued quickly and needed frequent breaks, and that he had restrictions on his flexibility. (AR 573-574). These findings thus support Dr. Young-Rodirguez's opinion that Claimant's back impairment limited his ability to walk or stand for more than 45 minutes, limited his ability to sit for more than 2 hours, and limited his ability to stoop, crouch, and crawl. (AR 573-577, 1502.)

Much of the remainder of the ALJ's cited evidence is largely unrelated to treatment of Claimant's back pain or does not provide substantial evidence to support the ALJ's finding that Claimant's examinations were "generally normal." *See Langley*, 373 F.3d at 1122 (merely pointing to evidence opining that it is inconsistent with a medical opinion is inadequate to meet the ALJ's burden of providing a rationale that a subsequent reviewer can follow.). The ALJ cites the following medical evidence:

19

- A March 2012 examination noting Claimant cannot exercise regularly because of back pain and deconditioning, "morbid obesity," exhibited decreased lateral and rotational motions in his back; and had "some impairment in mobility." (AR 628-629);
- An August 2012 examination in which doctor noted chronic back pain, expressed concern about Claimant's weight, and noted impaired flexion (AR 625-626);
- An October 2012 examination in which doctor discussed using trigger point injections if physical therapy did not improve back pain (AR 623);
- A December 2012 examination in which Claimant stated his back pain was getting worse and that doctor expressed concern about Claimant's inactivity and weight gain (AR 620);
- A February 2013 examination noting Claimant's chronic back pain and medication (AR 672);
- An April 2013 examination related to treatment of Claimant's diabetes (AR 616);
- A February 2014 examination where Claimant presented "moderate spine pain" and was taking both gabapentin and oxycodone to manage the pain (AR 651);
- A March 2014 examination by a nurse, in which assessments for depression administered (AR 648);
- An April 2014 examination in which Claimant reported a December 2013 accident aggravated his back pain and in which he reported gabapentin was not "controlling his pain" (AR 1088);
- February 2014, November 2014, February 2015, September 2015, March 2016, November 2016, February 2017, and May 2017 examinations related to Claimant's diabetes (AR 1105, 1109, 1112, 1118, 1124, 1147, 1355, 1365);
- December 2013, January 2014, , July 2014, August 2014, September 2014, October 2014, November 2014, January 2015, March 2015, April 2015, June 2015, July 2015, September 2015, December 2015, and August 2016 examinations to evaluate Claimant's medication or do blood work (AR 1116, 1122, 1129, 1131, 1133, 1136, 1145, 1149, 1151, 1159, 1161, 1163, 1165, 1350, 1352, 1361.)

These are just some examples of how the ALJ mischaracterized the record, minimized the impact of Claimant's impairment as noted by treating professionals, or failed to explain how cited evidence undermined Dr. Young-Rodrigeuz's opinion. "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, and here, the record contains substantial medical evidence that supports Dr. Young-Rodriguez's

medical opinion. In contrast, the ALJ's rejection of Dr. Young-Rodriguez's medical opinion which rests on mischaracterized and cherry-picked evidence is not supported by substantial evidence.

Finally, the ALJ also mischaracterized Dr. Young-Rodriguez's examination and findings. The ALJ provides a cursory and inaccurate summary of Dr. Young-Rodriguez's opinion, stating only that "his determination that the claimant can lift 20 pounds occasionally is supported by his examination findings, which were "generally normal" and that the limitations found by Dr. Young-Rodriguez were "not supported by his examination findings." (AR 1895.) However, Dr. Young-Rodriguez made several observations that support the limitations that he found, and the ALJ's characterization of his examination as "generally normal" is inaccurate. For example, Dr. Young-Rodriguez observed that Claimant (1) shifted his upper body down and to the right excessively when he walked, (2) required assistance getting up from the examination table, (3) had mild difficulty dressing himself; (4) and could perform only half a squat. (AR 1501.) These observations directly undermine the ALJ's statement that Dr. Young-Rodirguez's examination findings were "generally normal." (AR 1501, 1895.) *Talbot*, 814 F.2d at 1463-64 (ALJ may not mischaracterize the evidence to support an unfavorable finding).

In sum, as was the case with the ALJ's treatment of Dr. LaCourt's opinion, the ALJ's dismissal of Dr. Young-Rodriguez's opinion is similarly flawed. The ALJ cited without explanation largely irrelevant evidence, ignored evidence that supported Dr. Young-Rodriguez's opinion, and mischaracterized Young-Rodriguez's opinion. The ALJ failed to provide adequate reasons for rejecting Dr. Young-Rodriguez's opinions and the final decision is not supported by substantial evidence.

C.      Remand

Where an ALJ's decision is not supported by substantial evidence, a district court has discretion whether to remand for further administrative proceedings or for an immediate award of benefits. *Salazar v. Barnhardt*, 468 F.3d 615, 626 (10th Cir. 2006); *Ragland v. Shalala*, 992 F.2d 1052, 1060 (10th Cir. 1993). In making this decision, courts consider both the length of time the matter has been pending and whether remand for additional fact-finding would serve any useful purpose given the available evidence. *Salazar*, 468 at F.3d at 626. When the Commissioner has failed to satisfy his burden of proof at step five, and when there has been a long delay as a result of his erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case ad infinitum until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

The length of time this claim has been pending weighs heavily in favor of an immediate award of benefits. Indeed, Claimant's petition has been pending for almost fifteen years. (AR 163-171, 172-173, 202.) Courts have granted immediate awards of benefits as the result of delays of four to eight years. *Groberg v. Astrue*, 415 F. App'x 65, 73 (10th Cir. 2011) (awarding benefits after five-year delay); *Huffman v. Astrue*, 290 F. App'x 87, 89-90 (10th Cir. 2008) (awarding benefits after six-year delay without considering whether additional fact-finding would be useful); *Salazar*, 468 F.3d at 626 (awarding benefits after five-year delay); *Bowman v. Apfel*, 221 F.3d 1351, 2000 WL 1034628, at *1 (10th Cir. 2000) (awarding benefits after seven-year delay); *Havice v. Chater*,

22

105 F.3d 669, 1997 WL 8852, *7 (10th Cir. 1997) (awarding benefits after eight-year delay); *Sisco*, 10 F.3d at 746 (awarding benefits after seven-year delay); *Long v. Shalala*, 9 F.3d 117, 1993 WL 425430, at *3 (10th Cir. 1993) (awarding benefits after four-year delay); *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) (awarding benefits after four-to-eight-year delay); *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993) (awarding benefits after four-year delay).

Here, the Commissioner has issued four final decisions after four administrative hearings held by two different ALJs:

1)  in the first decision (AR 36-47), the ALJ erred by not developing the record to account for Claimant's mental impairment (AR 800-13), which the agency noted on intake (AR 199);
2)  in the second decision (AR 721-742), the ALJ erred by not accounting for all the limitations described by Dr. LaCourt (AR 1587-1599);
3)  in the third decision (AR 1509-1523), the ALJ erred in evaluating the opinions of Dr. LaCourt and Dr. Young-Rodriguez, failing to cite to any medical evidence on which she relied to discredit the opinions; (AR 1520, 1978) and
4)  in the fourth decision (1881-1909), the ALJ erred by mischaracterizing the opinions of Dr. LaCourt and Dr. Young-Rodriguez and by failing to provide a rationale for reviewing authorities to follow that establishes her reasons for discrediting them.

The ALJs' repeated failures to accurately weigh and characterize the consulting examiners opinions over the course of the last three administrative proceedings suggests a predisposition to reach an unfavorable decision. *See Sisco*, 10 F.3d at 746 (relying in part on ALJ's pattern of failing to take claim seriously). The ALJs' pattern of discrediting the opinions of consulting examiners without setting forth a rationale supported by substantial evidence further weighs in favor of an immediate award of benefits. *Groberg*, 415 F. App'x at 73 (commenting on ALJ's "tendency to avoid the issue by misstating the evidence" in awarding immediate benefits).

There is little to be gained by further factfinding given the available evidence. This is Claimant's fourth appeal to this Court, and he has met his burden to show disability at the first four steps of the sequential evaluation process throughout all four administrative proceedings and

23

appeals therefrom. The ALJ has denied benefits at step five, where the burden is on the Commissioner to establish that Claimant retained the ability to perform a significant number of jobs in the national economy. *Lax*, 489 F.3d at 1084. The Commissioner has had four attempts to gather sufficient evidence to support the finding and, most recently, the Appeals Council directed the ALJ to "request the non-treating source provide additional evidence and/or further clarification of the opinion," if necessary. (AR 1979.)  The ALJ did not do so and presumably after 15 years the record is complete. (AR 1884-1898.) The Court should decline to remand to give the Commissioner a fifth opportunity to meet his burden.

Moreover, the ALJ included few of Dr. LaCourt's opinions in the RFC, finding that he could "perform simple, routine, repetitive tasks and make simple work decisions" but not imposing any limitations on his ability to concentrate, persist, follow directions, or work without supervision. (AR 1890). Dr. LaCourt found that Claimant had no more than marginal literacy and marked limitation in sustained concentration, task persistence, carrying out instructions, and working without supervision. (AR 1405.) Dr. LaCourt opined that Claimant would need additional supervision, frequent breaks, and was markedly limited in task persistence. (AR 1404-1406.) The vocational expert testified during the final administrative hearing that there would be no jobs in significant numbers in the national economy that Claimant could perform: 1) if Claimant required one additional 15-minute break per day; 2) if he needed Supervision 15% of the time; or if he were off task 10% of the time. (AR 1940.) The vocational expert answered similarly during the third administrative hearing. (AR 1558-1559); *see also Groberg*, 415 F. App'x at 73 (noting that missing just a few days a work a month or being off task 10% of the time would erode claimants job base and awarding immediate benefits). Thus, had the ALJ included additional limitations suggested by Dr. LaCourt in the RFC, the vocational expert acknowledged that Claimant could not perform any

job that existed in significant numbers in the national economy. *See Miller*, 43 F. App'x at 204 (observing vocational expert "eliminated one job after another from plaintiff's occupational base where additional limitations from mental impairment were added to hypothetical questions); *Bibbs v. Apfel*, 3 F. App'x 759, 764 (10th Cir. 2001) (vocational expert could not identify a job claimant could do with restrictions set forth in consulting opinion).

Similarly, the ALJ found Claimant had the RFC to occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl, contrary to Dr. Young-Rodriguez's opinion (AR 1890.) In addition, the ALJ found Claimant had the RFC to do light exertional work, except that he could "stand, walk, and sit for 4 hours, and he has [undescribed] postural limitations." AR (1895.) The vocational expert during the fourth administrative hearing was not asked hypothetical questions about the types of jobs that would exist had Claimant's RFC included the more significant limitations contained in Dr. Young-Rodriguez's opinion. (AR 1936-1941.) However, during the third administrative hearing a vocational expert testified that if a hypothetical individual could not stoop, crouch, or crawl, at least one of the jobs would be eliminated. (AR 1558.) The additional limitations identified by Dr. Young-Rodriguez, specifically the need to change between sitting and standing and to limit both sitting and standing also erode jobs Claimant would be able to perform. *See, e.g., Armer v. Apfel*, 216 F.3d 1086, 2000 WL 743680, at * 4 (10th Cir. 2000) (observing that sedentary work requires sitting 6 hours per day and a person unable to sit that long would be unable to perform sedentary work); *Ford v. Apfel*, 216 F.3d 1087 (10th Cir. 2000) (court awarded vocational expert testified that claimant's combination of physical impairments limited claimant's ability to sit and cognitive impairments would be "problematic").

The opinions offered by Dr. LaCourt and Dr. Young-Rodriguez are significantly more restrictive than the ALJ's assessment of Claimant's RFC. Given the vocational experts' responses

25

to hypotheticals reflecting a more restrictive RFC in line with the consultative examiners' medical opinions, and the length of time that has passed since Claimant's initial application, I recommend the Court remand for an immediate award of benefits.

## IV.    CONCLUSION

Claimant's application, pending for approximately 15 years, has now bounced between the Commissioner and reviewing courts four times, and each time, even with explicit directions as to remand considerations, the ALJ has not supported an unfavorable decision with substantial evidence. For the third time, the ALJs have improperly weighed the opinions of two consultative examiners. In this instance, the ALJ has inaccurately described the opinions of the consultative examiners, cherry-picked from the medical evidence, and failed to explain her conclusion that the consultative examiners' opinions are inconsistent with the medical evidence. Further, despite multiple opportunities to develop the record, including direct instructions from the Appeals Council to supplement the consulting examiners report, if necessary, the Commissioner has not done so and has not met his burden at step 5 to show that Claimant can perform other work in the national economy, considering his RFC, age, education, and work experience. Under these circumstances, an immediate award of benefits is appropriate. Thus, for all the reasons set forth herein, I recommend the Court GRANT Claimant's Motion, reverse the Commissioner's decision denying benefits, and REMAND this matter to the Commissioner for an immediate award of benefits.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**